PEOPLE v NAUGLE

Docket No. 82487. Submitted February 4, 1986, at Lansing. Decided
    June 2, 1986.

Carlton E. Naugle was convicted of four counts of first-degree
    criminal sexual conduct and one count of second-degree crimi-
    nal sexual conduct by a jury in Lenawee Circuit Court and was
    sentenced to four concurrent terms of from fifteen to thirty
    years imprisonment for the first-degree criminal sexual conduct
    convictions and a concurrent term of from ten to fifteen years
    imprisonment on the second-degree criminal sexual conduct
    conviction, John C. Timms, J. Defendant appealed. *Held:*

    1. The trial court did not err in not requiring more specificity
    as to the dates on which the alleged offenses occurred. The
    offense dates were identified as nearly as the circumstances
    would permit.

    2. Testimony by a physician indicating that the complainant
    had been subjected to sexual penetration was admissible de-
    spite the lack of a foundation relative to the condition of the
    complainant's pelvis prior to the alleged offenses. The doctor
    did not express an opinion as to when the penetration had
    occurred.

    3. The trial court's departure from the Sentencing Guidelines
    in sentencing defendant to greater minimum prison terms for
    his first-degree criminal sexual conduct convictions was not
    improper. The judge gave valid reasons for the departure.
        Affirmed.

1. CRIMINAL LAW — INDICTMENT AND INFORMATION — TIME OR IDEN-
        TITY OF OFFENSE.
    The time or identity of an offense should be stated in the
    information as nearly as the circumstances will permit to
    enable the accused to meet the charge (MCL 767.51; MSA
    28.991).

REFERENCES
Am Jur 2d, Criminal Law §§ 525-631, 947, 963, 1008.
Constitutionality of "rape shield" statute restricting use of evidence
    of victim's sexual experiences. 1 ALR4th 283.
See also the annotations in the ALR3d/4th Quick Index under
    Criminal Law; Sentence and Punishment.

2. CRIMINAL LAW — INDICTMENT AND INFORMATION — TIME OR IDEN-
   TITY OF OFFENSE.

 Trial courts have the discretion to determine when and to what
extent specificity in stating the time or identity of an offense in
an information will be required (MCL 767.51; MSA 28.991).

3. CRIMINAL LAW — INDICTMENT AND INFORMATION — TIME OR IDEN-
   TITY OF OFFENSE.

 Factors that a trial court should consider when determining
when and to what extent specificity is required in stating the
time and identity of an offense in an information include (1) the
nature of the crime charged, (2) the victim's ability to specify a
date, (3) the prosecutor's efforts to pinpoint a date, and (4) the
prejudice to the defendant in preparing a defense.

4. CRIMINAL LAW — INDICTMENT AND INFORMATION — SPECIFIC DATES.

 An information or bill of particulars should not be held to be
deficient for failure to pinpoint a specific date where the facts
demonstrate that the prosecutor has stated the date and time
of the offense to the best of his or her knowledge after under-
taking a reasonably thorough investigation.

5. RAPE — CRIMINAL SEXUAL CONDUCT — TIME OF OFFENSE.

 Time is not an element of a sexual assault offense.

6. RAPE — CRIMINAL SEXUAL CONDUCT — EXPERT WITNESSES —
   EXAMINING PHYSICIANS.

 An examining physician's testimony is admissible in a criminal
sexual conduct case for the narrow purposes of establishing
penetration or penetration against the will of the victim.

7. RAPE — CRIMINAL SEXUAL CONDUCT — EXPERT WITNESSES —
   EXAMINING PHYSICIANS.

 An examining physician is not qualified to opine whether an
alleged victim of criminal sexual conduct was assaulted on the
alleged date if the victim has engaged in intercourse subse-
quent to the alleged assault but prior to the medical examina-
tion unless a proper foundation is established; a proper founda-
tion requires some evidence as to the condition of the victim's
pelvic area prior to the date of the alleged assault; without
such a foundation, the physician's testimony must be limited to
whether penetration has occurred.

8. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES.

 A sentencing judge is permitted to depart from the recommended
minimum ranges imposed by the Sentencing Guidelines where
he follows the departure policy set forth in the guidelines and

states the reasons for such departure on the record; it is not an abuse of discretion for a judge to rely on some of the same factors already considered in the sentencing guidelines as a basis for departing from the recommended minimum sentencing range.

9. CRIMINAL LAW — SENTENCING.

A sentencing judge may consider other criminal activity of a defendant which does not result in a conviction or charge; however, such reliance is only proper if the information is accurate.

10. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORTS — APPEAL.

A criminal defendant must be given an opportunity to review his presentence report and to refute factual information which will be relied upon in sentencing; if that information is refuted, the judge may either accept the defendant's version of the facts, disregard the information, or hold an evidentiary hearing to ascertain its validity; if the defendant does not take advantage of the opportunity to object to the information, the issue may not be brought up on appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nathan T. Fairchild,* Prosecuting Attorney, and *Tonatzin M. Alfaro Garcia,* Assistant Attorney General, for the people.

*Douglas Hartung,* for defendant on appeal.

Before: ALLEN, P.J., and HOOD and R. C. LIVO,* JJ.

ALLEN, P.J. In this matter we have the opportunity, for the first time, to set forth and describe the degree of specificity of the stated time or identity of the offense mandated by the following language in MCL 767.51; MSA 28.991:

[T]he court may on motion require the prosecution to state the time or identify the occasion [of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the offense] as nearly as the circumstances will permit, to enable the accused to meet the charge.

Following a jury trial, defendant was convicted on November 1, 1984, on four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(b); MSA 28.788(3)(1)(b). He was sentenced on December 18, 1984, to four concurrent terms of fifteen to thirty years imprisonment, to be served concurrently with a fifth term of ten to fifteen years imprisonment. Defendant appeals from his convictions and sentences as of right.

Complainant, the defendant's former stepdaughter, testified that in 1984, when she was thirteen years old, the defendant engaged in sexual relations with her on three separate occasions. The first two incidents took place while defendant was still married to complainant's mother and while he was still residing at the family home. The third episode unfolded at the defendant's apartment, after he and complainant's mother had separated.

Complainant testified that the first assault took place at approximately 2:45 A.M. one morning, while her mother was working the night shift. Defendant awoke complainant and informed her that her friend Quincy had come by to visit and was waiting downstairs in the family room. When complainant entered the family room and Quincy was nowhere in sight, the defendant led her into his bedroom. He ordered her to disrobe, undressed himself, made her rub his penis, and then proceeded to engage in sexual intercourse with her. Further, he treatened to hurt complainant's mother, and then complainant, if anyone was informed of this incident.

The second episode also took place while complainant's mother was working. As complainant pretended to sleep, the defendant tried to awaken her and then carried her downstairs to his bedroom. While she continued to feign slumber, defendant pulled down one leg of her pajamas and inserted his penis into her vagina. Complainant then pretended to awake, and was told by defendant to implicate her natural father if it ever became known that she was sexually active. Complainant refused and returned to her room.

Complainant testified that the final incident took place on the day that defendant's new vacuum cleaner was delivered to her home. Complainant cleaned defendant's apartment every Thursday, but always while he was at work. On this particular day, defendant was at complainant's home when she arrived from school, and drove complainant to his apartment so that she could do some housework. However, instead of leaving the apartment, the defendant called into work sick. He then indicated that he wanted to have sex with complainant, and threatened to hurt her mother if she refused to cooperate. Complainant therefore acquiesced as the defendant put his penis in her mouth and, thereafter, in her vagina.

Complainant had difficulty recalling exactly when these events took place. Detective Robert Wolverton indicated that such confusion was not abnormal, explaining that children who are victims of ongoing sexual assaults will often confuse one episode with another. In addition, these children often experience difficulty in remembering the exact dates of the assaults. Wolverton therefore worked with complainant in an effort to have her identify the dates. He encouraged her to recall some other events that she could temporally associate with the assaults. These other events were

then used as reference points in zeroing in on the dates that these assaults happened.

With respect to the final episode, this technique was successful. Complainant recalled that the assault took place on the day that defendant's vacuum cleaner was delivered. Complainant's aunt, Terrie Naugle, testified that she and defendant both purchased and took delivery of vacuum cleaners from a door-to-door salesman on May 21, 1984. Further, Terrie Naugle corroborated complainant's testimony, stating that complainant left with defendant after he purchased the vacuum cleaner and that complainant regularly cleaned his apartment.

With regard to the first two assaults, complainant could only narrow the time periods during which the assaults occurred to a range of possible dates. She recalled that the first assault happened about two weeks before she, her mother, and her brother were taken to a protective shelter because the defendant had a gun and was threatening to shoot himself. Complainant's mother reported that they went to the shelter on March 18, 1984. Thus, Wolverton concluded that the first incident took place between February 1 and March 18, 1984.

With respect to the second offense, complainant believed that it had occurred on a Thursday, since she had a test on the following day and tests were given on Fridays. In addition, she recalled unusual weather conditions. She remembered that the snow accumulation on the ground had melted and that her uncle had mowed the grass once or twice before they had another snowfall. The second incident occurred after the weather had warmed up again. Wolverton dated these weather patterns as having occurred between April 1, 1984, and May 20, 1984. At trial, a weather observer testified that the last date of snow accumulation on the ground

was March 29, 1984. On April 17, 1984, there was a snowfall but the snow melted without accumulation.

Defendant's motion to dismiss the charges relative to the first two incidents was denied. As an alternative, defendant requested a bill of particulars seeking to clarify the dates of the offenses. However, this was not furnished, presumably because no more specificity could be provided. Defendant maintains that the imprecise dates set forth in the information effectively precluded him from preparing an alibi defense. He now argues that he was denied due process of law by the trial court's failure to require that the dates of the offenses be alleged with more specificity. Thus, we must determine whether the trial court's failure to require a more definite time frame was proper.

An information need only state the time of an offense "as near as may be." MCL 767.45(2); MSA 28.985(2). However, MCL 767.51; MSA 28.991 provides in pertinent part:

> [T]he court *may* on motion require the prosecution to state the time or identify the occasion [of the offense] *as nearly as the circumstances will permit,* to enable the accused to meet the charge. [Emphasis added.]

Although this Court has never been called upon to construe the foregoing language, the statute clearly endows the trial court with discretion to determine when and to what extent specificity will be required. Accordingly, we will not reverse the lower court decision absent an abuse of that discretion. Nonetheless, we believe that certain factors should be included in making such a determination, including but not limited to the following: (1) the nature of the crime charged; (2) the victim's

ability to specify a date; (3) the prosecutor's efforts to pinpoint a date; and (4) the prejudice to the defendant in preparing a defense.

Where the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, we would be disinclined to hold that an information or bill or particulars was deficient for failure to pinpoint a specific date. See *People v Morris,* 61 NY2d 290; 473 NYS2d 769; 461 NE2d 1256 (1984). Moreover, while we believe that a defendant's intention to assert an alibi defense should be a consideration in the trial court's determination, we do not believe that it must necessarily militate in favor of either requiring specificity or dismissing the charges against a defendant. Such a holding would give rise to an untenable tactic. A defendant would simply have to make the assertion of alibi in order to escape prosecution once it became apparent that a child was confused with respect to the date of a sexual assault.[1]

Moreover, given that an exact date need not be specified,[2] like the circumstances in *State v DBS,* 700 P2d 630, 634 (Mont, 1985), the assertion of an alibi defense in this particular case appears specious. In *DBS,* the father was charged with incest, which was alleged to have occurred during a ten-month period in which the defendant's daughter was in his sole custody. The court noted that

---

[1] We note that in *People v Howell,* 396 Mich 16, 27, n 13; 238 NW2d 148 (1976), the Supreme Court suggested that an imprecise time allegation would be acceptable for sexual offenses involving children, given their difficulty in recalling precise dates.

[2] Defendant does not take issue with the fact that neither MCL 767.45(2) nor MCL 767.51 requires an exact date. Moreover, he does not suggest that due process requires such precision. He merely asserts that designating a span of ninety-eight days during which two of the assaults occurred was unreasonable and that a shorter time period should have been provided.

offering an alibi for this ten-month period would have been a futile gesture. Similarly, where, as here, the defendant was living in the same house with his victim over an extended period of time and the victim was often left solely in defendant's care it appears that creating a viable alibi defense was not a realistic option.

Given the facts of this case, we find no error in the trial court's decision not to require more specificity. The offense dates herein were identified "as nearly as the circumstances [would] permit." MCL 767.51. The victim was thirteen years old at the time of the alleged offenses. Although only three offenses were charged, she testified that the defendant had been molesting her since she was approximately eight years old. Thus, it is conceivable that specific dates would not stick out in her mind. As Detective Wolverton explained, children who are victims of ongoing sexual assaults have difficulty remembering the exact dates of the individual assaults. Complainant testified that she was unable to recall the specific dates of the incidents. Detective Wolverton's testimony suggests that the prosecution exerted a good-faith effort to specify the dates. The detective tried to help complainant remember the dates by establishing some points of reference and was successful in assigning the time periods given in the informations. Under the circumstances, we do not believe that the trial court abused its discretion in holding that the informations were sufficiently specific.

Defendant next asserts that the prosecution failed to establish the dates of these offenses beyond a reasonable doubt. However, time is not an element of a sexual assault offense. *People v McConnell,* 122 Mich App 208, 212; 332 NW2d 408 (1982), rev'd on other grounds 420 Mich 852 (1984). Moreover, defendant's argument is primar-

ily based on inconsistencies in complainant's testimony with respect to the dates.[3] We note that complainant's testimony as to dates was corroborated by other witnesses. In any event, we believe that any inconsistencies have affected the weight the jury chose to accord her testimony, but would not necessarily have negated its substance. We are not prepared to assume the jury's role of weighing the evidence or of assessing complainant's credibility.

Defendant next argues that an improper foundation was established for Dr. Ascuncion Luz' testimony regarding the condition of complainant's pelvic area. In a criminal sexual conduct case, an examining physician's testimony is admissible for the narrow purposes of establishing penetration or penetration against the will of the victim. *People v McGillen #2,* 392 Mich 278, 284; 220 NW2d 689 (1974). If a victim has engaged in intercourse subsequent to the alleged assault but prior to the medical examination, the physician is not qualified to opine whether the victim was assaulted on the alleged date unless a proper foundation is established. *People v Gerald Wells,* 102 Mich App 558, 561-562; 302 NW2d 232 (1980), lv den 417 Mich 916 (1983); *People v Mikula,* 84 Mich App 108; 269 NW2d 195 (1978). A proper foundation requires some evidence as to the condition of the victim's pelvic area prior to the date of the alleged assault. Without such a foundation, the physician's testi-

---

[3] Defendant also argues that the proofs were deficient due to the fact that the prosecutor posed numerous leading questions to the complainant. We note that defendant objected to only one question on the basis that the prosecutor was leading. We find no abuse of discretion in the trial court's overruling of this objection on the grounds that "[the leading of the witness wasn't] all that bad at [that] point." See MRE 611(a) and (c). Defendant failed to renew the objection at any later point in complainant's testimony and, accordingly, we do not believe that this facet of defendant's argument has been preserved for review.

mony must be limited to whether penetration has occurred. *McGillen #2* and *Wells, supra.*

In the instant case, Dr. Luz's testimony was confined to the issue of whether penetration had occurred. She explained that the victim's hymen was torn and that her vaginal opening was unusually lax for a thirteen-year-old child, indicating that complainant had been penetrated more than once or twice. The doctor *did not* express an opinion as to *when* the penetration had occurred. Therefore, her testimony was admissible despite the lack of a foundation relative to the condition of complainant's pelvis prior to the alleged offenses. See *Wells, supra.*

Finally, defendant maintains that the trial court's departure from the sentencing guidelines was based on improper considerations. Defendant's minimum term for the first-degree criminal sexual conduct convictions was fifteen years, whereas the recommendation under the guidelines was six to ten years. We believe that the trial judge gave valid reasons for the departure.

Although the sentence calculated pursuant to the guidelines took into account the stepfather-stepdaughter relationship,[4] the judge found this factor significant and cited it as a reason for departing from the guidelines. Since the factor was already considered pursuant to the guidelines, defendant asserts that additional consideration was error. However, this argument was rejected in *People v Kenneth Johnson,* 144 Mich App 125, 137; 373 NW2d 263 (1985). A sentencing judge is free to reconsider or accord more weight to a factor already taken into account by the sentencing guidelines. *Id.*

In defendant's presentence report, there appar-

---

[4] Three points were assigned under Offense Variable 7 for offender exploitation of the victim's vulnerability.

ently was an allegation, attributed to complainant, asserting that defendant had been having sexual relations with his stepdaughter since she was seven years old. At trial, defendant testified that he had never had sexual relations with complainant. Since defendant's trial testimony refuted the statement in the presentence report, defendant maintains that the trial judge erred in considering this factor without first holding an evidentiary hearing. See *People v Books,* 95 Mich App 500, 505; 291 NW2d 94 (1980).

A sentencing judge may consider other criminal activity of a defendant which does not result in a conviction or charge. However, such reliance is only proper if the information is accurate. *People v McCuaig,* 126 Mich App 754, 762; 338 NW2d 4 (183), lv den 419 Mich 876 (1984), to ensure accuracy, the defendant must be given an opportunity to review his presentence report and to refute factual information which will be relied upon in sentencing. If refuted, the judge may either accept the defendant's verison of the facts, disregard the information, or hold an evidentiary hearing to ascertain its validity. *Books, supra.* However, if the defendant does not take advantage of the opportunity to object to the information, relief is unavailable on appeal. *People v Butts,* 144 Mich App 637, 641; 376 NW2d 176 (1985).

The record demonstrates that the defendant was given an opportunity to review his presentence report prior to sentencing. Moreover, although he disputed some dates relative to his marriage and divorce, he otherwise confirmed that the report was factually accurate at sentencing. Since the defendant did not object to the information contained in the presentence report, he is entitled to no relief. His denial at trial of the past sexual

involvement was not sufficient to notify the sentencing judge that the information may have been inaccurate or subject to dispute. We think it obvious that the proper time to refute a presentence report is at the sentencing hearing, and not at trial. Accordingly, defendant's convictions and sentences are affirmed.

Affirmed.