PEOPLE v MILLER

Docket No. 92490. Submitted October 6, 1987, at Grand Rapids. Decided December 8, 1987.

Terry E. Miller was convicted of one count of criminal sexual conduct in the first degree and one count of criminal sexual conduct in the second degree following a jury trial in Emmet Circuit Court, Richard M. Pajtas, J. The convictions arose out of multiple acts of sexual abuse by defendant of a five-year-old boy at the child care center at which defendant was employed. Defendant was sentenced to life imprisonment on the first-degree criminal sexual conduct conviction and a term of from ten to fifteen years imprisonment on the second-degree criminal sexual conduct conviction. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion by allowing the testimony of another child at the child care center relative to similar acts of sexual abuse performed by defendant on that child. Since the acts were similar in nature and occurred under circumstances similar to those giving rise to the charges in this

REFERENCES

Am Jur 2d, Criminal Law §§ 525 *et seq.*

Am Jur 2d, Evidence §§ 493 *et seq.*; 1103.

Am Jur 2d, Expert and Opinion Evidence §§ 181 *et seq.*

Am Jur 2d, Indictment and Information §§ 66 *et seq.*; 104 *et seq.*

Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.

Joinder of offenses under Rule 8(a), Federal Rules of Criminal Procedure. 39 ALR Fed 479.

Remoteness in time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offenses. 88 ALR3d 8.

Necessity and admissibility of expert testimony as to credibility of witness. 20 ALR3d 684.

Power of court to make or permit amendment of indictment with respect to allegations as to place. 14 ALR3d 1335.

Power of court to make or permit amendment of indictment with respect to allegations as to time. 14 ALR3d 1297.

Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.

case, that testimony tended to establish defendant's plan, scheme and opportunity to commit the charged offenses.

2. The trial court did not abuse its discretion by denying defendant's motion for separate trials on the two counts. While the two counts involved separate acts of sexual abuse, joint trial of the two counts was proper since those separate acts evidence a plan or scheme on the part of the defendant to sexually molest the victim whenever the opportunity presented itself.

3. The information sufficiently specified when the offenses were committed in view of the limited ability to determine the exact time of offenses because of the circumstances, including the victim's age. Defendant was not unduly prejudiced by the lack of further specificity.

4. The trial court properly denied defendant's motion for appointment of a witness who was an expert on the credibility of child victims, since the testimony of such a witness would necessarily involve an opinion as to the veracity of the complainant and such testimony is inadmissible in criminal sexual conduct cases.

5. Defendant's claim that the failure of the prosecutor to provide the full and accurate transcript of a videotaped interview constituted a breach of a pretrial discovery order is without merit in view of the fact that no such full transcript existed.

6. While it was error to allow an investigator to testify as to statements the victim had made to her during her investigation, the error was harmless in view of the fact that the victim had already testified as to those statements.

7. The closing argument by the prosecutor constituted fair comment on the evidence.

8. It was error for the trial court, in sentencing the defendant, to make an independent determination that defendant was guilty of criminal sexual conduct involving another child at the child care center.

Affirmed, but remanded for resentencing.

1. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a criminal defendant's similar criminal act may be admitted where: (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced; (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan, or system in doing the act, or opportunity, preparation, or knowledge; (3)

one or more of those factors is material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

2. Criminal Law — Evidence — Similar Acts — Judicial Discretion.

It is not an abuse of discretion for the trial court in a criminal trial involving alleged acts of sexual abuse on a five-year-old victim at a child care center to permit another child at the center to testify that the defendant committed similar acts of sexual abuse upon the witness under similar circumstances.

3. Criminal Law — Trial — Joinder — Judicial Discretion.

It is not an abuse of discretion for a trial court to permit joinder for trial of separate counts of criminal sexual conduct where the acts giving rise to the separate counts took place on separate days but where each count involved an act of sexual abuse by the defendant upon the same victim under circumstances which evidenced a scheme or plan by the defendant to abuse the victim whenever the opportunity presented itself.

4. Criminal Law — Indictment and Information — Time or Identity of Offense.

Factors that a trial court should consider when determining when and to what extent specificity is required in stating the time and identity of an offense in an information include (1) the nature of the crime charged, (2) the victim's ability to specify a date, (3) the prosecutor's efforts to pinpoint a date, and (4) the prejudice to the defendant in preparing a defense.

5. Criminal Law — Indictment and Information — Specific Dates.

An information or bill of particulars should not be held to be deficient for failure to pinpoint a specific date where the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation.

6. Criminal Law — Evidence — Expert Witnesses — Credibility of Witnesses.

It is not an abuse of discretion for a trial court to deny in a criminal sexual conduct trial a defense motion for appointment of a witness who is an expert on the credibility of child victims where the principal witnesses were children, since the thrust of any testimony of such an expert would, of necessity, be an opinion as to the credibility of the children's testimony and, therefore, would be inadmissible.

7. EVIDENCE — HEARSAY — HARMLESS ERROR.

    The erroneous admission of hearsay testimony is harmless error where the same facts are shown by other competent testimony.

8. CRIMINAL LAW — SENTENCING.

    A sentencing judge may consider other criminal activity of a defendant which does not result in a conviction or charge; however, such reliance is only proper if the information is accurate, and it is improper for the sentencing court to make an independent finding of the defendant's guilt of the other alleged criminal activity.

9. CRIMINAL LAW — SENTENCING GUIDELINES.

    A sentencing court may go outside the sentencing guidelines where special circumstances or characteristics of the defendant demand such departure.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John F. Salan,* Prosecuting Attorney, and *Thomas C. Johnson,* Assistant Attorney General, for the people.

*Lester O. Pollak,* for defendant.

Before: DANHOF, C.J., and CYNAR and J. E. MIES,* JJ.

PER CURIAM. Following a jury trial held in Emmet Circuit Court, on March 20, 1986, defendant was convicted of one count of criminal sexual conduct in the first degree, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and one count of second-degree CSC, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). On April 21, 1986, defendant was sentenced to serve life imprisonment for the first-degree CSC conviction and ten to fifteen years imprisonment for the second-degree CSC conviction. The sentences were to run concurrently. Defendant appeals as of right. We affirm defendant's convictions, but we

* Circuit judge, sitting on the Court of Appeals by assignment.

vacate defendant's sentences and remand the case to the trial court for resentencing.

The charges against defendant arose out of alleged incidents of child molestation involving a five-year-old boy who was attending school at the Children's Learning Center located at North Central Michigan College. The criminal information alleged that between October, 1984, and February, 1985, defendant was involved in criminal sexual conduct in the first- and second-degree with the five-year-old victim.

Prior to trial, the defense filed several motions including: motion to specify the time of the offense, motion for appointment of an expert witness, motion to compel election between the counts of the information, motion to compel production of documents, motion to change venue, and motion in limine to prohibit similar acts testimony and the use of anatomically correct dolls. The trial court denied all of defendant's motions except for the motion for production of police reports.

At trial, prior to the victim's testimony, the court held a competency hearing and determined that the child was sufficiently intelligent to tell the truth and competent to testify. The victim testified that, during the time in question, he attended the Children's Learning Center in the morning and afternoon. The victim remembered defendant from the school and made an in-court identification of defendant. The child stated that defendant asked him to pull his pants down. Defendant touched the boy's "peep," meaning his penis, with defendant's finger. Defendant also inserted his finger between the victim's buttocks.

The victim was shown six photographs of the learning center and was asked to identify the locations where defendant molested him. The victim said that, at the nap area, defendant inserted

his finger in the victim's rectal area. The second picture was of the block area. It was there that defendant touched the victim's penis. In the loft area, defendant touched the victim's buttock. The victim also said that defendant touched his penis in the shack area. The photograph showing the cubby and coat area was where defendant also touched the victim's buttock. The victim indicated that these events took place during warm weather.

Thereafter, the child was given two anatomically correct dolls; one was smaller and represented himself, while the larger one represented defendant. The boy pulled down the pants on the smaller doll and placed the big doll's hand on the smaller doll's penis. He then placed the finger of the larger doll between the buttocks of the smaller doll. The victim felt defendant's finger go inside his rectum because he said that it hurt him.

Finally, the victim said that, when he spoke with Officer Scott Croton, he did not tell the officer anything about these incidents because he did not know the officer very well.

On cross-examination, the victim said that defendant was the only grown-up that he did not like at the learning center. The victim admitted to speaking with several different grown-ups regarding these incidents. He also admitted that some of these people told him that defendant "did bad things." The victim acknowledged telling several of the adults that nothing happened to him. The child remembered speaking to an Ann Selega, who had dolls with her at the time. The boy said that Selega did not show him with the dolls what defendant had allegedly done.

On the second day of trial, the defense renewed its motion to exclude similar acts testimony of another five-year-old also enrolled at the learning center. The trial court denied the motion and this

other child testified. The other child stated that defendant put his penis in the boy's mouth in the house area of the learning center. In the loft area, defendant penetrated the boy's rectum with his finger. Using anatomically correct dolls, the other child demonstrated these alleged acts. The other child then identified defendant as the one who committed these acts.

Robin Zollar Smietanka, of Assault Recovery Associates, was called by the prosecution as an expert witness. She has investigated over 4,000 child assault cases, conducted training seminars throughout the state, has three degrees from the University of Michigan and is a certified social worker. She did not interview the two boys, but sat in on the interview and provided consultation to the prosecution. She also advised both boys regarding court procedure and the giving of testimony. In the course of preparing children for court, her practice is to use anatomically correct dolls.

Smietanka stated that four- and five-year-old children communicate verbally and are able to carry on a conversation. They have difficulty with telling and understanding the concept of time. The children understand the importance of telling the truth and they have a very good ability to recall specific events. These types of victims are very reluctant in telling about sexual abuse. It is very common for a child who has been sexually abused to delay disclosing this fact. One reason is that the children are forced into secrecy by the perpetrator. Another reason is that children understand sexual abuse differently than adults. They view it as someone touching a private part of their body. These children also do not tell because they believe that they are doing something wrong and possibly do not have the skills to discuss it.

Smietanka further stated that at these ages the children can distinguish between fantasy and reality and do not fantasize about things which have no basis in reality. They do not fantasize about sexual experiences since there is no basis in reality for such fantasies.

When initially interviewed about possible sexual abuse, these children will not disclose any facts indicating abuse because they are not familiar with the interviewer. Usually, it takes multiple interviews with the same people before a child will begin revealing facts about possible abuse.

For the most part, a sexual abuse event is traumatic for children. It is very difficult for anyone to relate a frightening and scary event. Most children are hesitant in talking about the incident. They become confused and reveal only a part of the information.

Finally, Smietanka said that she was "comfortable" with the interview she observed and was comfortable with the victim's preliminary examination testimony that she viewed.

Nancy E. Decker, director of the learning center, testified that defendant was one of the "workfare" individuals at the center. He performed maintenance duties and also assisted at times in supervising and watching the children. He usually watched the children in the loft area. Other times, defendant would take the children to the bathroom, walk them to the door, or help them with their snowsuits. She was uncomfortable with defendant watching the children because he teased them excessively. She could not recall the victim ever becoming anxious or traumatic following any encounter with defendant.

Sheryl Brown was the afternoon teacher at the center. She testified that during the afternoons

defendant was usually alone with the children since she and defendant were the only adults at the learning center. Neither the victim nor the other child made any statements to her concerning sexual abuse.

Detective Sergeant Croton of the Michigan State Police interviewed the victim in the presence of the victim's brother and father on February 14, 1985. The victim made no admissions indicating any sexual abuse. On March 19, 1985, Sergeant Croton interviewed the victim once more. Again, no admissions were made by the child.

Anne H. Selega, a Department of Social Services investigator, interviewed the victim on three different occasions. A videotape interview was held on July 18, 1985. She used anatomically correct dolls to assist the child in describing what happened. Over hearsay objections, Selega stated that the victim identified the larger doll as defendant and the smaller one as himself. The boy said that defendant told him: "Look at my peep.", and defendant said to the boy: "I want to see your peep."

Following the prosecution's case in chief, defendant renewed his motion for the appointment of an expert to rebut the testimony of Smietanka. The court denied the motion.

Defendant took the stand and denied any contact whatsoever with the victim. Defendant recalled viewing a videotape interview of the two boys and stating that he thought the children had rehearsed their story. However, defendant admitted telling one of the officers during the viewing of the tape that something happened to these children.

Following deliberations, the jury found defendant guilty as charged. He now appeals as of right raising eight issues.

Initially, defendant argues an abuse of discretion

by the trial court when it admitted "similar acts" testimony of a separate sexual offense. Specifically, defendant objects to the introduction of the testimony of the other child. Defendant claims that this testimony bore very little similarity to the instant offense.

Generally, prior bad acts of a defendant are excluded as substantive evidence. The policy consideration underlying the exclusion is "the desire to avoid the danger of conviction based upon a defendant's history of other misconduct rather than upon the evidence of his conduct in the case in issue." *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982); *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969).

A narrow exception to the rule is provided in MRE 404(b) which states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

Before such evidence may be admitted, certain safeguards must be met:

> (1) [T]here must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the

slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. [*Golochowicz, supra,* p 309.]

When requesting admission for substantive purposes, the prosecution's first duty is to identify, with specificity, the purpose for which such evidence is admissible by identifying which of the purposes named in MRE 404(b) justifies admission of such evidence as "material." *Golochowicz, supra,* p 314.

Furthermore, one or more of the factors listed in MRE 404(b) must be genuinely in issue, meaning defendant has made one or more of them an issue actually disputed in the case. *Id.,* p 316.

The admission of similar acts evidence is a matter within the trial judge's discretion and will not be disturbed on appeal absent an abuse of that discretion. *People v Sorscher,* 151 Mich App 122, 135; 391 NW2d 365 (1986), lv den 425 Mich 882 (1986). We conclude that the evidence was properly admitted.

Defendant does not contest the first requirement of *Golochowicz, supra.* Defendant claims that the second requirement has not been met. He alleges that there is no special circumstance or similarity indicating a distinctive "signature" linking the two offenses. We disagree.

The second requirement "refers to the relationship between the charged and uncharged offenses which supplies the link between them and assures thereby that evidence of the separate offense is probative of some fact other than defendant's bad

character." *Golochowicz, supra,* p 310. In this case, there is a high degree of similarity between the prior acts and the charged offenses. The testimony of the victim indicated that defendant touched the victim's penis in the block and snack areas of the learning center. The other child testified that defendant performed fellatio on him in the house area and placed his finger in the boy's buttocks in the loft area. The common elements include defendant's use of his finger to penetrate the boys and repeated use of the loft area and other secluded places in the learning center to accomplish these acts. Also, both children were five years old, and defendant had access to them by virtue of his employment at the learning center. All of these acts tended to show a "special circumstance" between the charged and uncharged offenses.

Thirdly, defendant's scheme, plan, system or opportunity were material to the case. Evidence probative of a matter "in issue" is material. *People v Oliphant,* 399 Mich 472, 489; 250 NW2d 443 (1976). Here, the prior acts were probative of defendant's plan, scheme or opportunity. The similar acts evidence showed that defendant took the opportunity to engage in sexual activity when the children were in locations at the learning center where he could not be seen.

Finally, the evidence was highly probative to establish defendant's conduct and motive. Any prejudicial effect was limited due to the judge's instruction to the jury to consider the similar acts evidence solely to determine a scheme, plan or system of the defendant. Defendant has not established error.

Defendant's second claim is also without merit. He alleges that the trial court should have granted his motion to sever the two-count information, since there was no proof that the touching of the

victim's penis was part of the same transaction as where defendant penetrated the boy's rectal area.

In *People v Johns,* 336 Mich 617, 622-623; 59 NW2d 20 (1953), the Court ruled that separate and distinct offenses may be charged as separate counts in an information and joined for trial where they are "committed by the same acts at the same time and the same testimony must be relied on for conviction."

In *People v Tobey,* 401 Mich 141, 153; 257 NW2d 537 (1977), the Supreme Court expanded the *Johns* holding with respect to situations where the offenses are not committed at the same time. In *Tobey,* the Court, quoting the ABA Standards Relating to Joinder and Severance,[1] held that a trial judge does not have the discretion to permit joinder of separate offenses unless the offenses "are of the

---

[1]

Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

(a) are of the same or similar character, even if not part of a single scheme or plan; or

(b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968), Standard 1.1.

(a) Whenever two or more offenses have been joined for trial solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.

(b) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (a), should grant a severance of offenses whenever:

(i) if before trial, it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or

(ii) if during trial upon consent of the defendant, it is deemed necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court should consider whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. *Id.,* Standard 2.2.

same or similar character" or "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." *Id.*

The *Tobey* Court cited the commentary accompanying the standards. The commentary identifies "same conduct" as referring to multiple offenses "as where a defendant causes more than one death by reckless operation of a vehicle." "A series of acts connected together" refers to multiple offenses committed "to aid in accomplishing another, as with burglary and larceny or kidnapping and robbery." "A series of acts . . . constituting parts of a single scheme or plan" refers to a situation such as "where a cashier made a series of false entries and reports to the commissioner of banking, all of which were designed to conceal his thefts of money from the bank." *Id.,* pp 151-152.

In our case, the charges against defendant are not based on the "same conduct" since the evidence does not indicate a single transaction. Nor are they based on "a series of facts connected together" due to the time frame contained in the information. These offenses are more akin to a "series of acts . . . constituting parts of a single scheme or plan." Here, the victim's testimony revealed that these incidents occurred during warm weather and at the learning center in locations of seclusion. These facts indicate a single plan or scheme on the part of defendant to sexually molest the victim when the opportunity presented itself.

Moreover, the trial did not involve substantially different proofs on these charges to the extent that it would confuse the defendant in his defense, or deprive him of any substantial right. *Johns, supra,* p 623.

In this third claim of error, defendant alleges that the trial judge erred when he denied defendant's motion to specify the time of the offenses. The information alleged that the offenses occurred between October, 1984, and February, 1985. The prosecutor maintained that it was impossible to ascertain the exact date and time given the young age of the victim. The trial court agreed and denied defendant's motion.

An information need only provide the time of an offense "as near as may be but no variance as to time shall be fatal unless time is of the essence of the offense." MCL 767.45(2); MSA 28.985(2). Also relevant is MCL 767.51; MSA 28.991, which, in relevant part, provides:

> [T]he court may on motion require the prosecution to state the time or identify the occasion [of the offense] as nearly as the circumstances will permit, to enable the accused to meet the charge.

In *People v Naugle,* 152 Mich App 227, 233; 393 NW2d 592 (1986), this Court took the opportunity to construe the foregoing language for the first time. Initially, the Court noted that the statute clearly empowered the trial court with discretion to determine when and to what extent specificity will be required. Accordingly, this Court will not reverse the lower court decision absent an abuse of that discretion.

The *Naugle* panel established several factors that a trial court should consider in determining when and to what extent specificity of the time of the offense will be required. They include: (1) the nature of the crime charged; (2) the victim's ability to specify a date; (3) the prosecutor's efforts to pinpoint a date; and (4) the prejudice to the defendant in preparing a defense. *Id.,* pp 233-234.

Where the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, an information or bill of particulars will not be deemed deficient for failure to pin down a specific date. *Id.,* p 234.

In the within case, the trial court properly exercised its discretion. The court considered the nature of the offenses, the age of the victim and his inability to recall dates and times.

Further, the prosecutor, after conducting a thorough investigation, could not specify the exact date and time of the offenses. Finally, since time is not an element of a sexual assault offense, *People v McConnell,* 122 Mich App 208, 212; 332 NW2d 408 (1982), rev'd on other grounds 420 Mich 852 (1984), defendant was not prejudiced in preparing a defense. Thus, we conclude that the trial court properly denied defendant's motion to specify the time of the offenses.

Next, defendant contends that he was denied a fair trial when the court refused to appoint an expert witness on the credibility of child victims.

MCL 775.15; MSA 28.1252 requires a defendant to show "to the satisfaction of the judge presiding over the court wherein such trial is to be had . . . [that] he cannot safely proceed to a trial [without the proposed witness]." Rulings on such motions are expressly left to the discretion of the trial court. *People v Thornton,* 80 Mich App 746, 752; 265 NW2d 35 (1978).

In the instant case, the trial court denied defendant's request on two grounds. First, the court noted that defendant's purpose for seeking an expert was to offer testimony on the credibility of child victims. We agree with the trial court in that this type of testimony is inadmissible. It is well settled that an expert witness may not render an

opinion as to a complainant's veracity in criminal sexual conduct cases. *People v Matlock,* 153 Mich App 171, 179; 395 NW2d 274 (1986); *People v McGillen #2,* 392 Mich 278; 220 NW2d 689 (1974). Matters of credibility are to be determined by the trier of fact. *People v Buckey,* 424 Mich 1, 17; 378 NW2d 432 (1985).

The purpose for which defendant sought expert testimony was highly suspect. We cannot conclude that an abuse of discretion took place in the denial of defendant's motion on this basis.

The second basis for denying defendant's request was that defendant did not make the requisite showing under the statute that, without the expert, defendant could not proceed to trial. Here, we find no violation of defendant's due process rights since he was afforded an adequate opportunity to present his case at trial. See *Ross v Moffitt,* 417 US 600, 612; 94 S Ct 2437; 41 L Ed 2d 341 (1974).

Finally, defendant's claim of ineffective assistance of counsel due to counsel's inability to secure the expert is without merit. Counsel filed a motion for appointment of the expert. The motion was denied by the trial court. On these facts, counsel was not deficient. *People v Garcia,* 398 Mich 250, 264-266; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977); *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Next, defendant argues that error took place when the prosecutor failed to provide defendant with a complete and accurate transcript of a videotaped interview with the victim. Defendant argues that a continuance should have been granted in order to obtain an accurate transcript.

In this case, a complete transcript of the videotaped interview had never been made. Thus, defendant was not denied due process of law. Cf., *United*

*States v Agurs,* 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976). In addition, counsel for defendant viewed the videotape in its entirety. The trial court's discovery order required the prosecutor to turn over to defendant copies of all police reports that had been filed, which the prosecution did. Thus, we find no violation.

Moreover, the court's denial of a continuance was not an abuse of discretion since there was no transcript to be provided. See *People v Bell,* 155 Mich App 408, 412; 399 NW2d 542 (1986).

Defendant's sixth claim of error is also without merit. He maintains that it was error to allow into evidence the hearsay testimony of Selega relative to the statements made by the victim during her interview with the boy. The prosecution argues that the prior consistent statement exception to the hearsay rule is applicable because, on cross-examination of the victim, defendant strongly implied that the child had been pressured to testify in a certain manner.

Prior consistent statements are not generally admissible as substantive evidence. Such statements are often admitted for the limited purpose of supporting the credibility of a witness who has allegedly been influenced to show that the witness told the same story before the influence was brought to bear or to rebut evidence that a prior inconsistent statement was made. *Brown v Pointer,* 390 Mich 346, 351-352; 212 NW2d 201 (1973); *People v Smith,* 158 Mich App 220, 227; 405 NW2d 156 (1987). Another admissible purpose of a prior consistent statement is rehabilitation of a witness impeached by a charge of recent fabrication. *People v Edwards,* 139 Mich App 711, 715; 362 NW2d 775 (1984).

In this case, none of the exceptions apply. The victim's prior consistent statements as testified to

by Selega were not made prior to the influence being brought to bear on the boy. These statements were made at the exact time of the alleged influence. Thus, these statements constitute hearsay. MRE 801(c).

However, even though this testimony was erroneously admitted, the error was harmless since the victim had already testified to these same statements. The erroneous admission of hearsay testimony is harmless error where the same facts are shown by other competent testimony. *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979); *Duke v American Olean Tile Co,* 155 Mich App 555, 572; 400 NW2d 677 (1986).

Next, defendant argues that he was denied a fair trial because the prosecutor, in closing argument, expressed his personal belief that defendant was guilty.

A prosecutor's closing argument is proper if based upon the evidence and the jury is not called upon to decide a case based on the prestige of his office. *People v Yearrell,* 101 Mich App 164, 167; 300 NW2d 483 (1980). The people have the right to comment upon the testimony in a case, argue the facts and evidence that a witness is not worthy of belief and to contend that a defendant is lying. *People v Jansson,* 116 Mich App 674, 693; 323 NW2d 508 (1982).

We do not find these comments to be improper. The prosecutor's argument was confined to the evidence presented at trial. Thus, it was proper.

Finally, defendant argues that he is entitled to resentencing because the court assumed that defendant was guilty of other uncharged acts of criminal sexual conduct in imposing the instant sentences. We agree.

A sentencing court may consider a defendant's admissions and even separate criminal activity for

which no conviction resulted, provided the defendant is given an opportunity to refute the facts or charges. *Naugle, supra,* p 238. However, it is improper for the sentencing court to make an independent finding of guilt on the considered charge. *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972). The remedy for violation of the foregoing rule is a remand to the lower court for resentencing. *Id.*

In the within case, the trial court erred since it made an independent finding of guilt with respect to the allegations of sexual abuse involving the other child. This is error and defendant should be resentenced.

As to defendant's other claims of error in sentencing, we find no merit. Under the departure policy of the sentencing guidelines, sentencing courts in their discretion may go outside the guidelines where, due to special circumstances or characteristics of the defendant, justice requires a sentence different than the one suggested. *People v Krauss,* 156 Mich App 514, 517; 402 NW2d 49 (1986).

Here, the court's reasons for departure were premised on the fact that the guidelines did not adequately consider the protection of society and the gravity of the offenses. The court was concerned about protecting other young children and thus imposed more severe sentences in hopes of deterring others from engaging in such conduct. These reasons are sufficient.

Moreover, these sentences were individualized to this particular defendant since the court stated that it examined defendant's background as well as his potential for rehabilitation.

Affirmed, but the sentences are vacated and the case remanded for resentencing. We do not retain jurisdiction.